JS 44   (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

loanDepot.com, LLC

**DEFENDANTS**

Kevin Luchko

**(b)** County of Residence of First Listed Plaintiff   Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Matthew J. Hank
Littler Mendelson, P.C.
1601 Cherry St., Suite 1400, Philadelphia, PA  19102
(267) 402.3000

Attorneys *(If Known)*
Benjamin E. Widener
Stark & Stark
993 Lenox Drive, Lawrenceville, NJ  08648
(609) 895.7358

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government
Plaintiff

☒ 3 Federal Question
*(U.S. Government Not a Party)*

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                      *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation ☐ 470 Racketeer Influenced and |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark ☒ 880 Defend Trade Secrets | Corrupt Organizations ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending ☐ 380 Other Personal | ☐ 720 Labor/Management Relations | Act of 2016 | (15 USC 1681 or 1692) ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | Property Damage ☐ 385 Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | Protection Act ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration ☐ 899 Administrative Procedure |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty **Other:** | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other ☐ 550 Civil Rights | ☐ 462 Naturalization Application ☐ 465 Other Immigration | | |
| | ☐ 448 Education | ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation -
Transfer

☐ 8 Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Defend Trade Secrets Act, 18 U.S.C. Section 1836 et seq.

Brief description of cause:
Misappropriation of Trade Secrets

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
March 21, 2022

SIGNATURE OF ATTORNEY OF RECORD
/s/ Matthew J. Hank

**FOR OFFICE USE ONLY**

RECEIPT #  _____   AMOUNT  _____   APPLYING IFP  _____   JUDGE  _____   MAG. JUDGE  _____

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 1515 Market St., Suite 1530, Philadelphia, PA 19102 _____

Address of Defendant: _____ 111 Corvus Circle, Media, PA 19063 _____

Place of Accident, Incident or Transaction: _____

---

*RELATED CASE, IF ANY:*

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐ No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐ No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐ No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐ No ☑

I certify that, to my knowledge, the within case ☐ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 03/21/2022        */s/ Matthew J. Hank*        86086
                        Must sign here
_____    _____    _____
                        *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.**  *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☑ All other Federal Question Cases
    *(Please specify):* __Defend Trade Secrets Act of 2016__

**B.**  *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify):* _____
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**

*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Matthew J. Hank _____, counsel of record *or* pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑ Relief other than monetary damages is sought.

DATE: 03/21/2022        */s/ Matthew J. Hank*        86086
                        Sign here if applicable
_____    _____    _____
                        *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

LOANDEPOT.COM, LLC,                          :
                                             :
      *Plaintiff*,                        :
                                             :
    v.                                   :
                                             :    Case No. 2:22-cv-01080
KEVIN LUCHKO,                                :
                                             :
      *Defendant*.                       :
                                             :

## VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER

Plaintiff loanDepot.com, LLC ("loanDepot"), through its undersigned counsel, respectfully submits this Verified Complaint against its former employee, Defendant Kevin Luchko:

**I.     NATURE OF THE ACTION**

1.     On January 7, 2022, after more than six years of employment with loanDepot, most recently as the Producing Branch Manager ("PBM") for loanDepot's Philadelphia, Pennsylvania Branch, Mr. Luchko abruptly resigned and immediately went to work for loanDepot's competitor, Movement Mortgage, LLC, in Plymouth Meeting, Pennsylvania.

2.     While still employed and paid handsomely by loanDepot as a PBM, Mr. Luchko hatched and implemented a scheme to loot loanDepot's business for his benefit, and the benefit of Movement Mortgage, by surreptitiously transferring vast quantities of confidential, trade secret, and legally protected information.  Mr. Luchko did this to prepare for the diversion of loanDepot's applicants and borrowers to Movement Mortgage.

3.     Mr. Luchko spent his final days transferring loanDepot's confidential and trade secret information, including highly sensitive confidential consumer information, to systematically begin the transfer of an existing pipeline of loans originated at loanDepot to Movement Mortgage.

1

For example, during the early morning hours of January 7, 2022, Mr. Luchko purloined an excel file that not only identifies **TEN THOUSAND FOUR HUNDRED AND SIXTY-NINE (10,469)** individuals who sought or received a loan from loanDepot, but also contains a compilation of confidential and trade secret information about those loan applicants and borrowers (including their first and last names, phone numbers, email addresses, mailing addresses, employment information, and the purpose for which they sought or obtained a loan, *e.g.*, for a purchase or refinance). Specifically, on January 7, 2022 at 2:59 a.m. EST, less than eight hours before he abruptly resigned from loanDepot, Mr. Luchko transferred a file named "all contacts.xlsx" from his loanDepot company-issued laptop *to his personal USB drive*. Mr. Luchko stole this file—only hours before his abrupt resignation—to divert the business of these 10,469 "contacts" to Movement Mortgage. loanDepot cannot think of another legitimate reason Mr. Luchko would have transferred this confidential and trade secret information from his loanDepot laptop *to his personal USB device* the morning of his resignation.

4.        On February 11, 2022, loanDepot filed a Demand for Arbitration and a Verified Statement of Claims with JAMS pursuant to the parties' arbitration agreement. The arbitration is captioned *loanDepot.com, LLC v. Kevin Luchko*, JAMS Ref. No. 1450008139.

5.        loanDepot brings this action to obtain a temporary restraining order and expedited discovery in aid of a later hearing for a preliminary injunction. loanDepot requires this relief to prevent Mr. Luchko from continuing to inflict more irreparable harm pending arbitration of loanDepot's claims for preliminary and permanent injunctive relief, damages, and attorneys' fees.[1]

---

[1] To preserve the *status quo* and the meaningfulness of the arbitration process, district courts have the authority to grant interim injunctive relief on arbitrable claims, provided the traditional prerequisites for such relief are satisfied. *Ortho Pharm. Corp. v. Amgen, Inc.*, 882 F.2d 806, 812 (3d Cir. 1989) (following the Courts of Appeals for the First, Second, Fourth, Seventh, and Ninth Circuits, and "hold[ing] that a district court has the authority to grant injunctive relief in an

## II.     PARTIES

6.      loanDepot.com, LLC is a Delaware limited liability company with its principal place of business in Orange County, California.   loanDepot is registered to business in Pennsylvania and maintains an office in Philadelphia, Pennsylvania.

7.      Kevin Luchko is an adult individual who resides in Media, Pennsylvania.

## III.    JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

9.      Venue is proper in this Court because the events giving rise to loanDepot's claims occurred in the Eastern District of Pennsylvania.

## IV.    FACTUAL BACKGROUND

10.     loanDepot is a nationwide residential mortgage lender licensed in all 50 states that has grown to become one of the largest retail mortgage loan originators in the country since its inception in 2010.

11.     loanDepot employs a nationwide team of nearly 11,000 team members, assists over 30,000 customers each month, and prides itself on its proprietary, cutting edge technology that provides a safe software platform for consumers to securely transfer their private income, employment, credit, tax, and asset information.  The chief means loanDepot uses to achieve these

---

arbitrable dispute, provided that the traditional prerequisites for such relief are satisfied").  More critically, where, as here, one party is being irreparably harmed by the status quo, thereby threatening to nullify the arbitration process, a district court *must* issue interim injunctive relief on arbitral claims to *alter* the status quo and stop the injury.  *Id.* at 814 ("If the existing "status quo" is currently causing one of the parties irreparable injury and thereby threatens to nullify the arbitration process, then it is necessary to alter the situation to prevent the injury." (citation omitted)); *AAMCO Transmissions, Inc. v. Dunlap*, No. 11-4009, 2011 WL 3586225, at *4 (E.D. Pa. Aug. 16, 2011) ("[T]he Third Circuit has rejected the argument that a district court may only issue a preliminary injunction in an arbitral dispute to preserve the status quo.  Rather, if one party is being irreparably harmed by the status quo and thereby threatens to nullify the arbitration process, a district court *must* alter the status quo to stop the injury." (emphasis added) (citing *Ortho Pharma.*, 882 F. 2d at 814)).

3

goals are through (1) an Information Security Program, (2) the enforcement of written policies, and (3) the enforcement of contractual provisions.

12.     Mr. Luchko holds a Mortgage Loan Originator ("MLO") license regulated by the Pennsylvania Department of Banking and Securities and was employed by loanDepot as an MLO and a Producing Branch Manager, working out of its Philadelphia Branch at 1515 Market Street, Suite 1530, from December 22, 2015 until his abrupt resignation on January 7, 2022.

13.     Mr. Luchko is now employed as an MLO and Branch Leader by Movement Mortgage, LLC, effective January 7, 2022.  He is the Branch Leader of Movement Mortgage's Plymouth Meeting, Pennsylvania branch at 2250 Hickory Road, Suite 100 ("Movement Mortgage's Plymouth Meeting Branch").

14.     As a licensed MLO, Mr. Luchko was and is required to comply with the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 ("GLBA"), which governs the treatment of confidential nonpublic information of consumers by financial institutions.  To ensure compliance with the GLBA and federal regulations promulgated thereunder, loanDepot has implemented significant controls to safeguard and secure its information and that of its valued consumers.  In addition to its written employment policies and pertinent employment agreements, loanDepot provides extensive training on consumer privacy laws and the GLBA.  Mr. Luchko, in particular, completed loanDepot's training.

A.     **loanDepot Aggressively And Diligently Protects Its Confidential And Trade Secret Information**

15.     loanDepot takes the protection of its confidential and trade secret information, as well as the security of confidential, non-public consumer information protected by laws and regulations, extremely seriously.

16.     loanDepot safeguards its data, information systems, and consumer and employee information with a sophisticated and elaborate Information Security Program ("ISP") governed by a written Information Security Policy updated as of July 8, 2020.  (*See* Ex. A, Information Security Program).

17.     The ISP, as described in the written policies, includes various components and levels of security and safeguards, including (a) a delineation of the roles and responsibilities of company personnel responsible for safeguarding and protecting business information and assets, including against unauthorized use, destruction, dissemination, or modification; (b) asset management, including ensuring an inventory of all company information technology assets; (c) asset control and user access management, including delineating access rights to Company information systems and administering user ID, user passwords, secure logon procedures, and other protections against unauthorized access; (d) use of encryption; (e) mobile device protection; (f) physical environment security; (g) communication security, including firewall and router configurations; (h) audit trails and logs; (i) data retention and disposal procedures; (j) policies on the use of email and social media; and (k) risk management procedures.

18.     Section 5.14.3.1 of the policy states that "[t]he following activities are strictly prohibited, with no exceptions: . . . (n) Sharing [consumer information] with nonapproved parties outside the Company; (o) Sharing [consumer information] outside approved business processes; [and] (p) Storage of Company Information is prohibited in non-Company managed locations such as personal drives, personal cloud storage, and devices."

19.     In addition to the ISP, loanDepot has written policies with which every employee, including Mr. Luchko, is provided and is expected to be familiar and comply.

20.     loanDepot has an Employee Handbook that has been in effect and updated occasionally.  loanDepot's current version of the Employee Handbook, updated in August 2019 ("Employee Handbook"), is available on the company intranet and may be accessed at any time.

21.     All loanDepot employees, including Mr. Luchko, are expected to familiarize themselves with the policies in the handbook and abide by them.

22.     On August 1, 2019, Mr. Luchko submitted an e-signature acknowledging receipt of the Employee Handbook.  By submitting the e-signature, Mr. Luchko acknowledged that he read and understood the Employee Handbook and agreed to abide by its terms.  The Employee Handbook includes or incorporates by reference these pertinent policies:

> (a) A "Confidential and Consumer Information" policy, which states: "[T]he Company has placed special emphasis on the appropriate collection, storage and use of customer information.  Your role in privacy protection is critical."
>
> (b) The Information Security and Safeguarding Policy and Procedure, referenced in Paragraph 16 above, which was updated effective July 8, 2020 and is incorporated by reference in the Employee Handbook.

23.     loanDepot also has a Mobile Device Management Policy available on the company intranet and with which all employees are expected to comply.  (*See* Ex. B, Mobile Device Management Policy).  The Mobile Device Management Policy includes extensive provisions designed to protect information communicated or received on mobile devices, including these provisions:

> (a) "All sensitive information should be stored on the loanDepot network servers.  This step ensures that data is secure and automatically backed up."

(b) "Do not move information from one mobile device to another mobile device via side loading (airdrop).  Instead, transfer information using company networks and/or approved methods of sharing company information."

(c) "Never copy sensitive data to the local drive on the notebook/mobile device."

(d) "All loanDepot data that is stored on the mobile device must be secured using loanDepot-mandated physical and electronic method at all times. Users must comply with physical security requirements at all times."

(e) "Saving or transferring company data from an approved mobile device to non-approved storage is strictly prohibited."

(*See* Ex. B, Mobile Device Management Policy).

24.     loanDepot requires its employees to sign written agreements containing strict provisions designed to protect and safeguard its confidential information, trade secrets, and company assets.  As set forth in more detail below, Mr. Luchko is a party to written agreements containing restrictive covenants prohibiting the disclosure, unauthorized use, transfer, or removal of loanDepot's confidential and trade secret information and further requires the return of all company information and property upon termination of the employment relationship.

**B.     Mr. Luchko Entered Into A Contract With loanDepot That Requires Him To Maintain The Confidentiality Of loanDepot's Confidential And Trade Secret Information**

25.     Mr. Luchko is a licensed MLO subject to state and federal laws and regulations governing the disclosure of confidential, non-public, personal information of consumers applying for and obtaining financing.

26.     To ensure strict adherence to the Company's legal obligations to consumers to protect their sensitive information, loanDepot not only expects its employees to abide by its written

employment policies, but also requires them to agree to restrictive covenants that safeguard consumer information, and loanDepot's trade secrets, assets, and proprietary information.

27.     On December 27, 2018, Mr. Luchko signed and agreed to the terms of a "Retail Master Incentive Plan" ("Compensation Agreement") to be eligible to receive incentive compensation under the agreement.  (*See* Ex. C, Compensation Agreement.)

28.     Under Section VI of the Compensation Agreement (titled "Employee Confidentiality, Company Property, and Non-Solicitation Obligations"), Mr. Luchko agreed to certain confidentiality obligations and non-solicitation restrictions:

> A.  Confidential Information & Tangible/Intangible Property.
>
> > 1.     Participant agrees that, while employed by the Company at any time thereafter, Participant will keep strictly confidential and will not, directly or indirectly, disclose to any person or entity or use for the benefit of Participant or any other person or entity any "Confidential Information," as defined below, that Participant learned, obtained or had access to in the course of or as the result of Participant's employment with Company or using Company's systems, access means or computing or mobile devices. Participant agrees, at all times, to take appropriate and reasonable steps to safeguard Confidential Information and to protect it against disclosure, misuse, unauthorized access, espionage and theft.
> >
> > 2.     "Confidential Information" means information and materials in any medium learned, obtained or accessed by Participant because of or through his or her employment with Company, or using Company's systems, access means or computing or mobile devices, about Company's business, prospects, plans and operations, products, processes, methods of doing business, systems, databases and technology, inventions and other intellectual property, loan origination and marketing practices, training, services, and Customers (as defined herein) and that is not known or readily available through proper and lawful means to the general public as well as Customer data. "Customers" mean, for purposes of this Section VI of this Plan, visitors or registrants to Company websites, leads, callers to Company call centers, loan or prequalification or preapproval

applicants (whether or not a loan is approved or closed or denied), and loan customers, in each case, past, present and future.

3.     Participant acknowledges and agrees that Company has taken reasonable measures to keep such Confidential Information confidential or secret, and that the Confidential Information derives independent economic value from not being generally known to and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information.

4.     Participant agrees that he or she will return any such Confidential Information and property to Company upon the termination of Participant's employment or at any other time promptly upon the request of Company and that Participant will not share, copy, transmit, or use such Confidential Information or property except only to the extent required solely for and in the course of Participant's employment by Company. To the extent the property is in an electronic format, Participant will confirm in writing upon request that he or she has returned or destroyed any such electronically-stored information or property that was in his or her possession, custody, and/or control.

5.     Upon termination of Participant's employment for any reason, or upon receipt of written request from Company, Participant shall immediately deliver to Company all tangible and intangible property (including computers, computing devices, cell phones, memory devices, files, data downloads and any other tangible item), drawings, notes, memoranda, specifications, devices, notebooks, formulas and documents, together with all copies of any of the foregoing, and any other material containing, summarizing, referencing, or incorporating in any way or otherwise disclosing any work product or Company materials.

B.     Non-Solicitation.   To the fullest extent permitted by applicable law, Participant agrees that he or she will not, while in the employment of Company and for a period of one (1) year after the termination of that employment regardless of reason, solicit or induce, directly or indirectly, whether on his or her own behalf, working with or through others, on or behalf of or through any other person, business or entity, an employee or independent contractor of Company to terminate or breach his or her employment or contractor

9

relationship with Company or apply for employment or a contractor relationship with any person, business or entity.

C.     Remedies.    Participant acknowledges that monetary damages alone will not be a sufficient remedy for Participant's breach of any provision of this Section VI of this Plan and that, in addition to other remedies available to Company, Company shall be entitled to specific performance, injunctive relief, or such other equitable relief a court of competent jurisdiction deems appropriate. The prevailing party in any legal action arising from or relating to Section VI of this Plan shall be entitled to recover its reasonable attorneys' fees and costs including those incurred in any related appeal.

D.     Continuing Obligations.  The obligations of the Participant under Section VI of this Plan and all ownership rights, assignments and licenses provided for in this Section VI of this Plan will survive and continue after the termination of the Participant's employment for any reason or any termination of the Plan.

(*See* Ex. C, Compensation Agreement at § VI.)

C.     **Mr. Luchko Spent His Final Days At loanDepot Purloining Highly Sensitive Confidential And Trade Secret Information, Including GLBA-Protected Confidential Consumer Information, To Use For His Benefit And The Benefit Of Movement Mortgage**

29.     Mr. Luchko negotiated a new employment arrangement with Movement Mortgage in or about December of 2021, the terms of which contemplated setting up and implementing a premeditated plan and strategy to divert existing and potential business to Movement Mortgage in advance of his employment separation.

30.     The transition plan—conceived and executed while Mr. Luchko was a loanDepot employee and on loanDepot's payroll—included the following:

(a) Copying or transferring confidential, non-public, personal information of applicants and borrowers to external storage devices (*e.g.*, USBs) and to personal cloud accounts (including cloud-based spreadsheet software like

Google's "Google Sheets") in breach of his legal duties to divert the business of those applicants and borrowers to Movement Mortgage; and

(b) Copying, transferring, and using loanDepot's confidential, proprietary, and trade secret information, including customer lists, contact lists, lists of active loans in the pipeline, financial data, and other confidential and trade secret information of loanDepot for use in his new employment relationship and for his benefit and the benefit of Movement Mortgage.

31.     After Mr. Luchko's abrupt resignation and immediate move to Movement Mortgage, loanDepot launched an internal investigation of its information systems.  loanDepot's investigation, which is ongoing, has so far revealed that Mr. Luchko copied or transferred highly sensitive and confidential information of loanDepot and its applicants and borrowers as he prepared to resign from loanDepot and go to work for Movement Mortgage.

32.     loanDepot's investigation is still in its nascent stage, but based on what it has found thus far, loanDepot believes that far more evidence of wrongdoing is forthcoming.  Because of the irreparable harm already inflicted, and to prevent Mr. Luchko from continuing to inflict more irreparable harm pending arbitration of loanDepot's claims for preliminary and permanent injunctive relief, damages, and attorneys' fees, loanDepot brings this action to obtain a temporary restraining order and expedited discovery in aid of a later hearing for a preliminary injunction.

33.     Examples of Mr. Luchko's unlawful conduct includes the following information retrieved from loanDepot's information systems and a forensic examination of Mr. Luchko's company-issued laptop computer:

(a) On December 3, 2021, Mr. Luchko logged in to a site called "Candid CRM" for the first time on his loanDepot computer.  This customer relationship

management (CRM) system is designed for loan originators.  However, loanDepot *does not* use Candid CRM.  It uses Mello, which provides loan originators with everything they need from start to finish, including a CRM database.  Mr. Luchko used this unsanctioned web application to create his own loan tracking system in an effort to divert business to Movement Mortgage.  loanDepot cannot think of another legitimate reason why Mr. Luchko would be using an unsanctioned loan origination system only a month before his abrupt resignation.

(b) On December 15, 2021, Mr. Luchko downloaded a file named "report1639587211430.xls" from the https://loandepot.my.salesforce.com website.[2]  This file is extremely large; however only 115 lines of data could be recovered.   This file is a compilation of confidential and GLBA-protected information about loanDepot's loan applicants and borrowers (including their first and last names, phone numbers, email addresses, mailing addresses, employment information, and the purpose for which they sought or obtained a loan from loanDepot, *e.g.*, for a purchase or a refinance).  An active copy of this file could not be located on Mr. Luchko's computer; however, forensic analysis revealed that this file existed within a "Volume Shadow Copy"[3] on the computer.  The file was deleted from Mr.

---

[2] Notably, this file name appears to be in the Unix time stamp method, meaning the number 1639587211430 in the file name converts to Wednesday, December 15, 2021 4:53:31.430 PM (GMT).  This is consistent with the downloaded date and time of this file by Mr. Luchko.

[3] A Volume Shadow Copy is essentially a snapshot of files at a point in time that allows a user or the system restore or recover files in the event of a system failure or data corruption. Volume Shadow Copy creation occurs upon a variety of events including operating system changes or

Luchko's computer sometime between December 15, 2021 and January 7, 2022.

(c) On the afternoon of December 30, 2021, Mr. Luchko transferred a folder named "Marketing" from his loanDepot computer onto a ScanDisk External Storage Device ("USB").[4]  A forensic review of Mr. Luchko's loanDepot computer revealed a folder named "Marketing," which contained at least the following files:

- All contacts.xlsx

- Copy of 122821_Luchko_All Loans Closed Updated.xlsx

- 122821_Luchko_All Loans Closed Updated.xlsx

- PA.csv

- 092421_Luchko_My Realtors on Funded Loans YTD-2021_36 Months.xlsx

- updated list for zillow.xlsx

- LEADS IN THE SYSTEM.xlsx

- 2020 Closings.xlsx

- closed wells fargo deals.xlsx

---

system backups. The purpose of a Volume Shadow Copy is to permit the operating system to protect files while changes are made so they can be restored if errors occur. A typical computer user is unable to see or access a Volume Shadow Copy and is generally unaware of its existence. Generally speaking, forensic tools are needed in order to access and review a Volume Shadow Copy.

[4]  The USB can be identified as Volume Serial#: 8840C839; Serial#\GUID: 09019e0d1a87608b6de91e23cb568f8c4ca23705199915ddabc637b7afc9b85.   According to loanDepot's forensic examination of Mr. Luchko's company-issued laptop, the first time this USB had ever been connected to Mr. Luchko's laptop was on December 15, 2021 at 11:56 a.m. ET.— only three weeks before his abrupt resignation.

- 2019 closings.xlsx

- 2018 closings.xlsx

- 2017 Closings.xlsx

- 2016 Closings.xlsx

- closed EB Deals 2.xlsx

- closed EB Deals.xlsx

- Kristine Davis LO DB - Funded YTD-2021-12-29-16-33-16.xlsx

- 2019 Production.xlsx

- Agents on Purchase Deals Before MM.xlsx

- Referral Partners.xlsx

- REFERRALS I WANT TO GO AFTER.xlsx

- zillow – kristine's name.xlsx

- Deals - reviews - realtors - social - contacts.xlsx

These files contain confidential, trade secret, and highly sensitive GLBA-protected information not only about loanDepot's customers and prospective customers, but also about the loans for which they applied. For example, the PA.csv file is a compilation of confidential and GLBA-protected information regarding 263 loanDepot customers (including their first and last names, email addresses, cell phone numbers, and work phone numbers) and the loans for which they applied (including, but not limited to, the loan number, loan amount, whether the interest rate is locked, when the interest rate lock expires, and loan type, *e.g.*, conventional fixed 30 year, jumbo fixed 30 year, FHA fixed 30 year, Jumbo fixed 30 year). Even more

14

troubling, the PA.csv file also identifies the status of each loan application, including whether it is in its nascent "origination" stage, or whether they have moved on to processing, underwriting, or are ready for closing, which a competitor (like Movement Mortgage) could use to identify those loanDepot customers ripe for poaching.   Mr. Luchko purloined this confidential, trade secret, and highly sensitive GLBA-protected information—eight days before his abrupt resignation—to divert the business of loanDepot's customers and loan applicants to Movement Mortgage.  loanDepot cannot think of another legitimate reason Mr. Luchko would have transferred this information from his loanDepot laptop *to his personal USB device* only days before his abrupt resignation.

(d) In the days leading up to his January 7, 2022 departure, Mr. Luchko frequently accessed a suspiciously nondescript folder entitled "New folder." On January 7, 2022 at 2:59 a.m. ET, less than eight hours before he abruptly resigned from loanDepot, Mr. Luchko connected the same USB drive to his loanDepot laptop and began transferring files from his company-issued laptop to his personal USB, including a file named "all contacts.xlsx"[5] and the "New folder."   The "all contacts.xlsx" file Mr. Luchko stole is loanDepot's curated list of 10,469 individuals[6] that contains a compilation of confidential and GLBA-protected information about loanDepot's loan

---

[5] The information contained in this file appears to come from "report1639587211430.xls" which Mr. Luchko downloaded from https://loandepot.my.salesforce.com on December 15, 2021.  (*See* ¶ 29(b), *supra*.)

[6] The 115 individuals we were able to recover from the "report1639587211430.xls" are also contained in the "all contacts.xlsx" file.

applicants and borrowers (including their first and last names, phone numbers, email addresses, mailing addresses, employment information) and the purpose for which they sought or obtained a loan from loanDepot (*e.g.*, purchase or refinance). loanDepot's forensic analysis of Mr. Luchko's company-issued laptop revealed that Mr. Luchko attempted to delete this file from loanDepot's laptop after he downloaded it to his personal USB. Fortunately, Mr. Luchko was not as adept as he was depraved: the forensic analysis was able to locate an AutoRecover[7] copy of this file. Further, the New folder on Mr. Luchko's computer contained files with highly suspicious names such as "\Zillow leads.csv" and "zillow nov 23.pdf." Mr. Luchko transferred this confidential, trade secret, and highly sensitive GLBA-protected information from his loanDepot laptop to his personal USB—only hours before his abrupt resignation—to divert the business of loanDepot's customers and loan applicants to Movement Mortgage. loanDepot cannot think of another legitimate reason Mr. Luchko would have transferred this information *to his personal USB device* the morning of his unexpected resignation.

(e) Also on January 7, 2022, Mr. Luchko accessed a personal, cloud-based document through Google Sheets, titled "Team Luchko Pipeline – Google

---

[7] AutoRecover, a feature that is available in some Microsoft Office applications (including Microsoft Excel), attempts to recover files automatically in the event of an application or system crash. It prepares for this by making AutoRecover copies of files while those applications are in use, tracking user edits and periodically resaving the AutoRecover copies during the editing session."

Sheets" 346 times on his loanDepot laptop.  *While he was accessing* this personal, cloud-based document, Mr. Luchko used his loanDepot laptop to access and download several "Pipeline" CSV files from loanDepot's Mello platform.  These "Pipeline" CSV files are a compilation of confidential and highly sensitive GLBA-protected information regarding hundreds of loanDepot customers (including their first and last names, email addresses, cell phone numbers, and work phone numbers) and the loans for which they applied (including, but not limited to, the loan number, loan amount, whether the interest rate is locked, when the interest rate lock expires, and loan type, *e.g.*, conventional fixed 30 year, jumbo fixed 30 year, FHA fixed 30 year, Jumbo fixed 30 year).  Even more troubling, the Pipeline CSV files also identify the status of each loan application, including whether they are in their nascent "origination" stage, or whether they have moved on to processing, underwriting, or are ready for closing, which a competitor (*e.g.*, Movement Mortgage) could use to identify those loanDepot customers ripe for poaching.  Perhaps most troubling, since his January 7, 2022 resignation, Mr. Luchko or his associates at Movement Mortgage continue to access and update this cloud-based document through Google Sheets.  Mr. Luchko or his associates at Movement have accessed and updated this Google Sheets document at least 40 times since January 7, 2022 (most recently on February 5, 2022).  As of today, there are approximately seven loans listed as in progress in the "Team Luchko Pipeline – Google Sheets" that are actually in progress at loanDepot.  Mr. Luchko's conduct (downloading and

17

accessing these Pipeline CSV files *while he was accessing* his "Team Luchko Pipeline – Google Sheets") suggests he transferred or copied this confidential, trade secret, and highly sensitive GLBA-protected information from loanDepot's Pipeline CSV files to his personal cloud-based document to divert an existing pipeline of loans originated at loanDepot for his use at Movement Mortgage.  loanDepot cannot think of a legitimate reason Mr. Luchko would be accessing and downloading loanDepot's confidential Pipeline CSV files at the same time he was accessing and updating his personal cloud-based document shortly before his unforeseen resignation. Nor can loanDepot think of a legitimate reason Mr. Luchko would continue to access, much less edit, the "Team Luchko Pipeline – Google Sheets" *after* he left loanDepot.

34.     Mr. Luchko took confidential and trade secret information from loanDepot knowing it was wrong.

35.     loanDepot is continuing to investigate the extent to which Mr. Luchko has taken or transferred confidential and trade secret information obtained during his employment with loanDepot to benefit himself or Movement Mortgage.  Unfortunately, loanDepot believes that further investigation and discovery will yield additional information regarding Mr. Luchko's theft of trade secrets and use and disclosure of confidential information for his use at Movement Mortgage.  loanDepot will seek leave to amend this Statement of Claims as appropriate.

**D.     Mr. Luchko Ignored loanDepot's Remonstrances**

36.     loanDepot sent a letter dated January 10, 2022 to Mr. Luchko.  (*See* Ex. D, January 10, 2022 Letter.)  loanDepot not only demanded that Mr. Luchko stop his unfair competition and unlawful conduct, it also requested immediate action to ensure that loanDepot's trade secret and

18

confidential business information is not disclosed or misused.  loanDepot also demanded that Mr. Luchko abide by the post-employment restrictive covenants in his Compensation Agreement, including his covenant not to solicit loanDepot's employees to end their employment relationship with loanDepot.

37.     Mr. Luchko did not respond.

38.     On January 17, 2022, loanDepot sent a second letter, through its undersigned counsel, demanding that Mr. Luchko preserve, maintain, and protect in their present state from destruction, modification, or alteration, all relevant documents and electronically stored information.  (*See* Ex. E, January 17, 2022 Letter.)

39.     In the January 17 letter, the undersigned asked Mr. Luchko to have his lawyer (should he retain one) contact the undersigned.  Neither Mr. Luchko, nor any attorney representing Mr. Luchko, has contacted loanDepot or the undersigned in response to the January 10 or January 17 letter.

## V.     CLAIMS

### A.     COUNT I: DEFEND TRADE SECRETS ACT

40.     loanDepot incorporates by reference its averments in the preceding paragraphs as if the same were set forth at length herein.

41.     loanDepot owned and possessed certain confidential and proprietary information, that constitutes trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq*.

42.     loanDepot has substantially invested time, effort, and money into creating and maintaining its trade secrets and has taken reasonable measures to keep such information secret and confidential, and to protect it from public disclosure.

43.     This confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

44.     In violation of loanDepot's rights, Mr. Luchko misappropriated loanDepot's confidential, proprietary, and trade secret information in an improper and unlawful manner as described above.

45.     Mr. Luchko's conduct strongly suggests that, if not enjoined, he will continue to disclose, and will use, loanDepot's trade secrets for his and Movement Mortgage's benefit and to loanDepot's detriment: the material he transferred or copied from his loanDepot computer to his USB device and personal cloud-based Google Sheet in December 2021 and January 2022 would serve no useful purpose except for being used to compete with loanDepot.

46.     Because the material he transferred or copied from his loanDepot computer to his USB device and personal cloud-based Google Sheet in December 2021 and January 2022 would serve no useful purpose except for being used to compete with loanDepot, the most logical inference is that Mr. Luchko has already used that material to compete with loanDepot, or has provided it to a third party, including Movement Mortgage, that has thus used the information.

47.     Mr. Luchko's misappropriation of loanDepot's trade secrets has been willful and malicious.

48.     Because of Mr. Luchko's completed and threatened misappropriation, loanDepot has suffered, and will continue to suffer, damage or loss.

49.     Mr. Luchko thus misappropriated loanDepot's trade secrets within the ambit of the DTSA.

B.     **COUNT II: PENNSYLVANIA UNIFORM TRADE SECRETS ACT**

50.     loanDepot incorporates by reference its averments in the preceding paragraphs as if the same were set forth at length herein.

51.     loanDepot owned and possessed certain confidential and proprietary information, that constitutes trade secrets under the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), 12 Pa.C.S.A. § 5301 *et seq*.

52.     loanDepot has substantially invested time, effort, and money into creating and maintaining its trade secrets and has taken reasonable measures to keep such information secret and confidential, and to protect it from public disclosure.

53.     This confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

54.     In violation of loanDepot's rights, Mr. Luchko misappropriated loanDepot's confidential, proprietary, and trade secret information in an improper and unlawful manner as described above.

55.     Mr. Luchko's conduct strongly suggests that, if not enjoined, he will continue to disclose, and will use, loanDepot's trade secrets for his and Movement Mortgage's benefit and to loanDepot's detriment: the material he transferred or copied from his loanDepot computer to his USB device and personal cloud-based Google Sheet in December 2021 and January 2022 would serve no useful purpose except for being used to compete with loanDepot.

56.     Because the material he transferred or copied from his loanDepot computer to his USB device and personal cloud-based Google Sheet in December 2021 and January 2022 would serve no useful purpose except for being used to compete with loanDepot, the most logical

inference is that Mr. Luchko has already used that material to compete with loanDepot, or has provided it to a third party, including Movement Mortgage, that has thus used the information.

57.     Mr. Luchko's misappropriation of loanDepot's trade secrets has been willful, wanton, malicious, outrageous, and in bad faith, thereby entitling loanDepot to an award of exemplary damages and attorneys' fees under 12 Pa.C.S.A. §§ 5304 and 5305.

58.     Because of Mr. Luchko's completed and threatened misappropriation, loanDepot has suffered, and will continue to suffer, damage or loss.

59.     Mr. Luchko thus misappropriated loanDepot's trade secrets within the ambit of the PUTSA.

60.     loanDepot is entitled to injunctive relief under 12 Pa.C.S.A. § 5303 to abate the misappropriation of its confidential and trade secret information.

**C.     COUNT III: BREACH OF CONTRACT**

61.     loanDepot incorporates by reference its averments in the preceding paragraphs as if the same were set forth at length herein.

62.     On December 27, 2018, Mr. Luchko entered into the Compensation Agreement to become a participant and receive benefits under the agreement.   (*See* Ex. C, Compensation Agreement.)

63.     The Compensation Agreement prohibited Mr. Luchko from transferring, using, or disclosing loanDepot's confidential information without authorization, and required that he return all confidential information upon the termination of his employment.

64.     Mr. Luchko breached Section VI of the Compensation Agreement by (1) taking, transferring, disclosing, or using loanDepot's Confidential Information (as defined by the Compensation Agreement) without authorization for his and loanDepot's competitor's use and benefit in the course of his employment with loanDepot's direct competitor, Movement Mortgage;

and (2) failing to return all Confidential Information (as defined by the Compensation Agreement) upon the termination of his employment.

65.     Because of Mr. Luchko's breach, loanDepot has suffered, and will continue to suffer, damages and loss.

66.     Mr. Luchko's actions were intentional, willful, outrageous, and malicious, and justify the imposition of exemplary damages.

67.     Under Section VI of the Compensation Agreement, besides monetary damages and other relief, loanDepot is entitled to equitable relief, including temporary, preliminary, and permanent injunctive relief.

68.     Section VI further provides that loanDepot is entitled to recover reasonable attorneys' fees and costs.

### D.     COUNT IV: CONVERSION

69.     loanDepot incorporates by reference its averments in the preceding paragraphs as if the same were set forth at length herein.

70.     Mr. Luchko has intentionally, and without lawful justification, exercised control over loanDepot's property, including its confidential and proprietary information and trade secrets, to deprive or interfere with loanDepot's right to use, control, and enjoy that property.

71.     Because of Mr. Luchko's actions, loanDepot has suffered, and will continue to suffer, damages and loss.

72.     Mr. Luchko's actions were intentional, willful, outrageous, and malicious, and justify the imposition of exemplary damages.

### E.     COUNT V: UNJUST ENRICHMENT

73.     loanDepot incorporates by reference its averments in the preceding paragraphs as if the same were set forth at length herein.

74.     By taking, transferring, disclosing, or using loanDepot's confidential and proprietary information, materials, and trade secrets without authorization for his own use and benefit, Mr. Luchko has unjustly enriched himself at loanDepot's expense.

75.     Under the circumstances as alleged above, it would be inequitable for Mr. Luchko to retain the benefits of his outrageous actions.

**F.      COUNT VI: BREACH OF FIDUCIARY DUTY**

76.     loanDepot incorporates by reference its averments in the preceding paragraphs as if the same were set forth at length herein.

77.     As an employee of loanDepot, Mr. Luchko owed fiduciary duties to loanDepot, including the duties of loyalty and good faith.

78.     His fiduciary duty to loanDepot required Mr. Luchko to utilize loanDepot's resources to further loanDepot's business—not its competitor's business—and to not divert business opportunities and customers of loanDepot to a competing business or for his own personal benefit.

79.     Mr. Luchko breached his duties of loyalty and good faith to loanDepot by knowingly and intentionally acting adverse to loanDepot's interests during his employment with loanDepot by: (a) misappropriating loanDepot's trade secrets; (b) taking, transferring, disclosing, or using loanDepot's confidential and proprietary information and materials without authorization for his own use and benefit (and that of loanDepot's competitor) and to loanDepot's detriment; and (c) diverting business opportunities, including prospective applicants and borrowers, to loanDepot's competitor, Movement Mortgage.

80.     Because of Mr. Luchko's actions, loanDepot has suffered, and will continue to suffer, damages and loss.

81.     Mr. Luchko's actions were intentional, willful, outrageous, and malicious, and justify the imposition of punitive damages.

### G.     COUNT VIII: INTENTIONAL INTERFERENCE WITH ECONOMIC ADVANTAGE

82.     loanDepot incorporates by reference its averments in the preceding paragraphs as if the same were set forth at length herein.

83.     loanDepot has developed and maintained economic relationships with prospective and existing applicants and borrowers.  Mr. Luchko knew the existence of those economic relationships and assisted in cultivating those economic relationships in his employment with loanDepot.

84.     Mr. Luchko intentionally, maliciously, and without lawful privilege or justification, interfered with loanDepot's economic relationships by diverting the business of prospective and existing applicants and borrowers to Movement Mortgage, using misappropriated confidential and trade secret information belonging to loanDepot, both during his employment with loanDepot and after accepting employment with Movement Mortgage.

85.     Because of Mr. Luchko's conduct, loanDepot has sustained damages and loss, and will continue to suffer monetary, competitive, and irreparable harm.

86.     Mr. Luchko's actions in interfering with loanDepot's relationships with its existing and prospective customers was and is undertaken with the knowledge, intent, and purpose of gaining economic advantage for himself and to harm loanDepot.

87.     Mr. Luchko's conduct was willful, wanton, malicious, and outrageous, thereby entitling loanDepot to an award of punitive damages.

**VI.     PRAYER FOR RELIEF**

WHEREFORE, Plaintiff loanDepot.com, LLC respectfully requests that the Court enter a temporary restraining order, including, but not limited to, the following relief:

A.     Ordering Defendant Kevin Luchko not to provide any services to any entity engaged in the mortgage industry, including, but not limited to, Movement Mortgage, LLC, pending an award in the arbitration captioned *loanDepot.com, LLC v. Kevin Luchko*, JAMS Ref. No. 1450008139;

B.     Enjoining Defendant Kevin Luchko, and all other persons or entities acting in concert with him or on his behalf, from directly or indirectly using, disclosing, or deleting any proprietary, confidential, or trade secret information of loanDepot;

C.     Ordering Defendant Kevin Luchko to provide for inspection, data collection, and analysis to loanDepot's agents or representatives any desktop, laptop smartphone, tablet computer, or external hard drive used by Defendant, including but not limited to iPhones, Androids, Blackberries, CD-ROMs, USB drives, and thumb drives;

D.     Ordering Defendant Kevin Luchko to provide for inspection, data collection, and analysis to loanDepot's agents or representatives all could storage accounts and all email accounts and emails therein used by Defendant in the last 12 months, as well as all information needed to access the cloud storage accounts and email accounts, including user identification and password;

E.     Ordering Defendant Kevin Luchko to return to counsel for loanDepot any and all documents, electronic, or digital files prepared during, arising from, or containing information related to loanDepot, including, but not limited to, all originals and copies of such documents, and all computer diskettes, smart phones, flash drives, or other data storage media containing such information;

F.     Ordering Defendant Kevin Luchko to certify that he has returned all information set forth in the above paragraphs C-E, and that he has not retained any copies of such information regardless of the form of the information (*e.g.*, original document, hard copy of document, facsimile copy, electronic email or image);

G.     Ordering Defendant Kevin Luchko to respond to loanDepot's First Set of Requests for Production of Documents within seven (7) days;

H.     Ordering Defendant Kevin Luchko to cooperate with loanDepot in scheduling his deposition;

I.     Enjoining Defendant Kevin Luchko from discarding, destroying, altering, erasing, or tampering with any document or electronic or digital file until all documents and electronic files relating to his employment with loanDepot are returned or turned over to loanDepot; and

J.     Granting loanDepot such other and further relief as the Court may deem just, equitable, and proper.

*/s/ Matthew J. Hank*

Matthew J. Hank (PA ID No. 86086)
Jonathan L. Shaw (PA ID No. 316882)
**LITTLER MENDELSON, P.C.**
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102.1321
267.402.3000 (t)
267.402.3131 (f)
MHank@littler.com
JLShaw@littler.com

*Attorneys for Plaintiff*
*loanDepot.com, LLC*

Date: March 21, 2022

## VERIFICATION

I, Chris Holloway, Vice President, Regional Production, on behalf of Plaintiff loandepot.com, LLC, hereby verify and declare under penalty of perjury, and pursuant to 28 U.S.C. § 1746, that the facts and information set forth in the foregoing Verified Complaint are true and correct to the best of my knowledge, information, and belief.  I understand that false statements in this Verification will subject me to penalties of perjury.

LOANDEPOT.COM, LLC

Date: 3/21/2022

By: _____
Chris Holloway
Vice President, Regional Production

29